# In the United States Court of Federal Claims

No. 18-49
Filed: March 7, 2018[*]

|  |  |
|---|---|
| *********************************** | |
| GENERAL DYNAMICS MISSION SYSTEMS, INC., | |
| Plaintiff, | |
| v. | Rule of the United States Court of Federal Claims 24(a)(2) (Intervention of Right); 65(b) (Temporary Restraining Order); 65(c) (Security Bond). |
| THE UNITED STATES, | |
| Defendant, | |
| and | |
| UNISYS CORPORATION, | |
| Defendant-Intervenor. | |
| *********************************** | |

**Paul F. Khoury**, Wiley Rein, LLP, Washington, D.C., Counsel for Plaintiff.

**Jeffrey A. Regner**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**Richard J. Webber**, Arent Fox LLP, Washington, D.C., Counsel for Defendant-Intervenor.

**MEMORANDUM OPINION AND TEMPORARY RESTRAINING ORDER**

---

[*] On March 2, 2018, the court forwarded a sealed copy of this Memorandum Opinion And Temporary Restraining Order to the parties to redact any confidential and/or privileged information from the public version and note any citation or editorial errors that required correction. The parties did not propose any redactions. The Government proposed one editorial change to correct a calculation in its request for security bond, that the court has made herein.

I.     **RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY.**[1]

On January 9, 2018, General Dynamic Mission Systems, Inc. ("GDMS") filed, under seal, a Complaint in the United States Court of Federal Claims alleging that the Transportation Security Administration ("TSA") improperly awarded a blanket purchase agreement to Unisys Corporation ("Unisys") for Domain Awareness Integrated Network ("DOMAIN") Support Services under Request For Quotes ("RFQ") No. HSTS04-17-Q-CT2506, because: (1) TSA failed to evaluate the quoters' technical approaches on a common basis, Compl. ¶¶ 72–79; (2) TSA failed to evaluate the quoters' pricing information on a common basis, Compl. ¶¶ 80–86; (3) TSA failed to conduct discussions with fundamental fairness, Compl. ¶¶ 87–91; (4) TSA failed to recognize the high risk associated with Unisys's proposed solution, Compl. ¶¶ 92–95; and (5) TSA's evaluation of GDMS's staffing approach was unreasonable, Compl. ¶¶ 96–99.  ECF No. 1.

On January 9, 2018, GDMS also filed, under seal, a Motion For Preliminary Injunction, (ECF No. 4), and a Memorandum Of Points And Authorities In Support Of Its Motion For Preliminary Injunction.  ECF No. 5.  In addition, GDMS filed a Motion For Protective Order, (ECF No. 6), that the court granted on January 9, 2018.  ECF No. 9.

On January 10, 2018, Unisys filed an Unopposed Motion To Intervene.  ECF No. 13.  On that same day, the court issued an Order granting Unisys's Unopposed Motion To Intervene, pursuant to Rule of the United States Court of Federal Claims ("RCFC") 24(a)(2).  ECF No. 15.

On January 16, 2018, GDMS filed, under seal, a Joint Notice Of Stay To Transition Activities And Proposed Schedule informing the court that the Government "agreed to a voluntary stay of all transition activities in preparation for performance of the blanket purchase agreement at issue in the above-captioned case through February 23, 2018, with the exception of vetting activities relating to [Unisys's] personnel, which the parties agree may continue in the interim."  ECF No. 20 at 1.  On that same day, the court issued a Scheduling Order.  ECF No. 21.

On February 2, 2018, the Government filed a Response And Cross-Motion For Judgment On The Administrative Record.  ECF No. 34.  Unisys also filed a Response And Cross-Motion For Judgment On The Administrative Record.  ECF No. 35.

On February 9, 2018, GDMS filed a Reply In Support Of Its Motion For Judgment On The Administrative Record And Response To The Defendants' Cross-Motions For Judgment On The Administrative Record.  ECF No. 36.

On February 16, 2018, the Government filed a Reply To GDMS's Response.  ECF No. 37.  On that same day, Unisys filed a Reply To GDMS's Response.  ECF No. 38.

---

[1]   The facts recited herein were derived from the January 9, 2018 Complaint ("Compl.").

On February 23, 2018, the court convened an oral argument at the United States Court of Federal Claims ("2/23/18 TR"). ECF No. 41. On that same day, GDMS filed, under seal, a Motion For Temporary Restraining Order ("2/23/18 Pl. Mot."). ECF No. 39. On March 1, 2018, the Government filed a Response to GDMS's February 23, 2018 Motion ("3/1/18 Gov't Resp."). ECF No. 42.

On March 1, 2018, the court requested that the Government agree to continue the voluntary stay of all transition activities in preparation for performance of the blanket purchase agreement through March 31, 2018. The Government failed to respond to the court's request. Consequently, the court reluctantly has determined to enter a temporary restraining order for the reasons that follow.

## II. DISCUSSION.

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 142 (2010); *see also* 11A C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2948 (3d ed. 2004). On a motion for temporary injunctive relief, the court must weigh four factors: (1) plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) "whether the balance of hardships to the respective parties favors the grant of injunctive relief;" and (4) "whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004); *see also* RCFC 65(c).

### A. Likelihood Of Success On The Merits.

As the court advised the parties during the February 23, 2018 hearing, it was not in a position to decide the merits of this bid protest and would need time to review the nearly 8,000 page Administrative Record and the parties' briefs in light of the oral argument. 2/23/18 TR at 105. Therefore, the court is not in a position to rule on the likelihood of success on the merits.

### B. Irreparable Harm.

When assessing irreparable harm, the relevant inquiry is whether the protestor has an adequate remedy in the absence of an injunction. *See PGBA, LLC v. United States*, 60 Fed. Cl. 196, 221 (Fed. Cl. 2004), *aff'd*, 389 F.3d 1219 (Fed. Cir. 2014). In this case, GDMS argues that it will be irreparably harmed, if the court does not grant injunctive relief, "because it has been deprived the opportunity to fairly compete for the contract" and "would likely lose employees and critical subcontractors during the transition process." 2/23/18 Pl. Mot. at 3. In many cases, the court has determined that the loss of the opportunity to fairly compete for a contract constitutes irreparable harm. *See FirstLine Transp. Sec., Inc. v. United States*, 100 Fed. Cl. 359, 400 (Fed. Cl. 2011); *Wackenhut Servs., Inc. v. United States*, 85 Fed. Cl. 273, 311 (Fed. Cl. 2008); *Cardinal Maint. Serv., Inc. v. United States*, 63 Fed. Cl. 98, 110 (Fed. Cl. 2004); *Hunt Building Co., Ltd. v. United States*, 61 Fed. Cl. 243, 279–80 (Fed. Cl. 2004); *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 654 (Fed. Cl. 2003); *United Payors and United Providers Health Servs., Inc. v. United States*, 55 Fed. Cl. 323, 333 (Fed. Cl. 2003); *see also SAI Indus. v. United States*, 60 Fed. Cl. 731, 747 (Fed. Cl. 2004) ("Irreparable injury can be shown in the form of lost opportunity to fairly compete

for and perform work under the contract[.]") (internal quotation marks and citation omitted). These decisions were issued under circumstances where the protestor "would not be able to recover lost profits associate with its loss of business." *United Payors*, 55 Fed. Cl. at 333. And, while "[a] potential loss of employees is a monetary loss that several courts have determined is substantial but not irreparable[,] . . . courts have [also] recognized that keeping a team together whose existence is eliminated in the absence of injunctive relief can constitute irreparable harm." *Glob. Computer Enters., Inc. v. United States*, 88 Fed. Cl. 350, 454, *modified on reconsideration*, 88 Fed. Cl. 466 (Fed. Cl. 2009) (internal quotation marks and citations omitted).

During the February 23, 2018 hearing, the Government explained that it could only agree to a voluntary stay through March 2, 2018, because GDMS's bridge contract option expires on March 18, 2018 and "it's going to take about two weeks before then to reroll an extension of that." 2/23/18 TR at 95–96. Therefore, beginning tomorrow, on March 3, 2018, in the absence of injunctive relief, TSA could begin transitioning contract performance to Unisys and GDMS would not be able to fairly compete for the contract nor recover lost profits associated with its loss of business. For these reasons, GDMS has shown that it will be irreparably harmed, if the court does not grant injunctive relief.

    **C.**    **Balance Of Hardships.**

When assessing the balance of hardships, "the court must consider whether the balance of hardships leans in the plaintiff's favor." *Overstreet Elec. Co v. United States*, 47 Fed. Cl. 728, 744 (Fed. Cl. 2000). This requires "a consideration of harm to the [G]overnment." *Id.* In this case, the Government argues that it will be harmed, if the court grants injunctive relief, for three reasons. First, granting injunctive relief will "delay testing to Credential Authentication Technology ("CAT")," that "is intended to automate the identification inspection process at airports[.]" 3/1/18 Gov't Mot. at 8. Second, "in order to extend the bridge contract to GDMS, TSA must draw funds from a limited risk reserve," that "is needed to fund unanticipated costs associated with the transition of the [Security Technology Integrated Program ("STIP")] support contract, including this bid protest, and will be exhausted on May 4, 2018 if used exclusively for the GDMS bridge contract, leaving TSA without a risk reserve for the remaining transition." 3/1/18 Gov't Mot. at 8. Third, the award of a bridge contract to GDMS will "delay the awarded DOMAIN BPA[,] including integration of the legacy [Transportation Security Equipment ("TSE")]." 3/1/18 Gov't Mot. at 8.

With regard to the first alleged hardship, the Government acknowledges that "CAT replaces manual inspection with an automated technology developed to ensure that only legitimate passengers, airport personnel, affiliated airline crews, and non-traveling passengers using a gate pass . . . gain access to sterile airport areas." 3/1/18 Gov't Mot. at 9. Therefore, although TSA would be "able to better verify a passenger's identity and ensure they receive the appropriate level of screening" with CAT, it is possible to continue using manual inspections until this bid protest is resolved. With regard to the second alleged hardship, the Government states that "[i]f the risk reserve is used exclusively to continue funding the bridge contract [to GDMS], it will be exhausted on May 4, 2018, leaving TSA without a risk reserve for remaining transition activities." 3/1/18 Gov't Resp. at 11. But, this implicitly acknowledges that the Government can continue funding the bridge contract to GDMS for a period of time, not to exceed May 4, 2018. In fact, TSA has awarded a bridge contract option to GDMS that will not expire until March 18, 2018. 3/1/18 Gov't

4

Resp. Ex. 1 at 2 (Wilson Decl.). In addition, the risk reserve funds will not be needed for transition activities, if GDMS succeeds in this bid protest and is awarded the contract. Similarly, with regard to the third alleged hardship, any need to integrate the legacy TSE would be obviated, if GDMS were to succeed in this bid protest and is awarded the contract.

GDMS argues that "there would be no harm to the Government; rather a TRO might benefit the Government[, because] GDMS is currently providing STIP support and could continue providing this support during the protest." 2/23/18 Pl. Mot. at 4. It is true that GDMS could continue providing STIP support under a bridge contract during this bid protest, but this will impose some hardship on the Government. TSA may be required to use funds from the risk reserve to continue to fund a second option on the bridge contract, if this bid protest is not resolved by March 18, 2018. GDMS also argues that "a TRO will keep the Government from paying to start the implementation of Unisys's solution, only to be forced to terminate the contract once GDMS's protest is sustained." 2/23/18 Pl. Mot. at 4. This, however, seems to be a risk TSA is willing to assume. In sum, issuance of a temporary restraining order will impose more harm to the Government.

### D. Public Interest.

As the United States Court of Appeals for the Federal Circuit has held, "[t]he function of preliminary injunctive relief is to preserve the status quo pending a determination of the action on the merits." *Cont'l Serv. Grp, Inc. v. United States*, 2018 WL 388634, at *5 (Fed. Cir. Jan. 12, 2018) (citing *Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 961 (Fed. Cir. 1984)). Since this case was filed, the court has adjudicated eight other cases on motions that have priority over this bid protest. Therefore, the court has not been able to conduct a meaningful review of the Administrative Record and briefs in this matter.

Accordingly, the court has determined that the four injunctive relief factors, on balance, weigh in favor of the issuance of a temporary restraining order. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) ("No one factor, taken individually, is necessarily dispositive . . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of others.").

### E. Security Bond.

RCFC 65(c) states, in relevant part,

> (c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

RCFC 65(c).

The Government states that "entering injunctive relief will cause the Government to extend the bridge contract to GDMS at the cost of $10,950.90 per day." 3/2/18 Gov't Resp. at 12. But, the Government will not incur any costs or damages as a result of this injunctive relief, because this 14-day temporary restraining order will expire on March 16, 2018, *i.e.*, prior to the expiration of the current bridge contract on March 18, 2018. 3/1/18 Gov't Resp. Ex. 1 at 2 (Wilson Decl.)

5

(TSA awarded a bridge contract to GDMS with "a one-month period of performance from January 19, 2018 to February 18, 2018, [that] was valued at $327,177." And, an additional option period was exercised on February 15, 2018 that extended the period of performance of GDMS's bridge contract from February 19, 2018 to March 18, 2018 "and increased the total value by $654,354, from $327,177 to $981,351."). For these reasons, the court has determined that GDMS is not required to provide a security bond.

### F. Temporary Restraining Order

Defendant, United States of America, the Transportation Security Administration, and their officers, agents, servants, employees, representatives, and all persons acting in concert and participating with them respecting the subject procurement, are hereby temporarily restrained and enjoined from permitting performance of and/or performing the contract awarded to Unisys Corporation on October 27, 2017 for Domain Awareness Integrated Network Support Services under Request For Quotes No. HSTS04-17-Q-CT2506 for a period of 14 days, *i.e.*, through March 16, 2018.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Chief Judge**
